1

2

3

**FILED**

**MAR 2 6 2007**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

**ENTERED**

**MAR 2 7 2007**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

[NOT FOR PUBLICATION]

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.  LA 05-38663-ER |
| | Chapter 11 |
| NAHAPET TIMIRYAN, | **MEMORANDUM OF DECISION** |
| | Date:   May 17, 2006 |
| | Time:   10:00 a.m. |
| Debtor. | Place:  Courtroom 1568 |
| | 255 East Temple St. |
| | Los Angeles, CA |

On May 17, 2006, the Court held a hearing on the Debtor In
Possession's ("Debtor") Motion for Turnover of Property of the
Estate ("Motion").  Appearances were as set forth on the record.
The Court denied turnover and entered an order on June 1, 2006.
The Court reserved the right to issue this Memorandum of Decision
explaining its decision.

1

**I**
**FACTUAL BACKGROUND**

2

3      Debtor filed for chapter 11 relief on October 6, 2006.  He

4   was in the mobile medical diagnostic industry through his

5   corporate entities.  Specifically, "Debtor's corporations owned

6   medical diagnostic equipment, which was placed at various medical

7   offices to assist the respective practitioners in conducting

8   tests for their patients."  Motion at 2.  In 2004, the Federal

9   Bureau of Investigation ("FBI") began investigating the billing

10  practices of certain medical offices.  Debtor was part of the

11  investigation since his diagnostic equipment was located at these

12  offices.

13     On December 17, 2005,[1] the FBI seized vehicles belonging to

14  the Debtor with a value of approximately $89,973.27 ("Seized

15
    Vehicles") and funds in an escrow account in the amount of
16
    $427,807.81[2], in which Debtor had a 50% interest ("Seized Funds"
17
18  and collectively "Seized Assets").

19     Despite numerous requests for return of the Seized Assets,

20  the FBI has refused to return them.  Debtor intends to use the

21  Seized Assets to fund a plan. Based on the claims filed in this

22
    _____
    [1]

23     This date appears to be a typographical error in the Motion.
24  According to the Government's Opposition to Motion
    ("Opposition"), the seizure took place in December of 2004, not
25  2005.

26     [2]These funds were the proceeds from a sale of real property.
    Motion at 5.  The Government further clarifies that the proceeds
27  were from the sale of real property located at 3138 and 3138 A, B
    and C Montrose Ave., Glendale, CA and 4037 Liberty Ave., Glendale,
28  CA.  Opposition at 2-3.

1 case, Debtor anticipates that the Seized Assets will result in a
2 100% payment to creditors.

3    Debtor currently seeks turnover of the Seized Assets on the
4 grounds that they are property of the estate, and relies on the
5 Supreme Court's decision in <u>United States v. Whiting Pools</u>, 462
6 U.S. 198, 205 (1983) that 'given the broad scope of the
7 reorganization estate, property of the debtor repossessed by a
8 secured creditor falls within this rule, and therefore may be
9 drawn into the estate.' <u>Id</u>. at 205-06." Motion at 6. Debtor
10 further asserts that "until title to property is adjudicated in
11 the government by judicial decree, the property is not owned by
12 the government." Motion at 6, *citing* <u>United States v. 92 Buena</u>
13 <u>Vista Ave.</u>, 507 U.S. 111, 126 (1993).
14

15    Since the Seized Assets are property of the estate, Debtor
16 contends that they must be turned over pursuant to § 542. "As
17 the Supreme Court held in <u>Whiting Pools</u>, this Court may order the
18 government agency to turn over property of the estate to the
19 Debtor. The language of Section 542 is mandatory and not
20 discretionary." Motion at 7.

21    Debtor finally argues that equity requires turnover of the
22 Seized Assets pursuant to § 105(a). No finding of wrongdoing on
23 Debtor's part has been made. Debtor seeks return of the Seized
24 Assets to ensure distributions to his creditors. If they are not
25 returned, "it is likely that the creditors will not receive any
26 distribution and this case may have to be converted to a Chapter
27

28

- 3 -

1  7."   Motion at 8.[3]

2      In opposition, the United States of America (the

3  "Government") provides that the seizure at issue occurred in

4  connection with the FBI investigation of Medical Echodiagnostic

5  ("Echodiagnostic"), Medical Sonodiagnostic ("Sonodiagnostic") and

6  other independent diagnostic testing facilities ("IDTF").  "The

7  IDTFs are suspected of submitting false claims to Medicare for

8  services never provided . . . and fraudulently receiving millions

9  of dollars from Medicare."  Opposition at 2.   The Government

10 believes that Debtor owned Echodiagnostic and his wife, Angela

11 Timiryan, owned Sonodiagnostic.  Declaration of Pio S. Kim in

12 Support of Opposition ("Kim Declaration") at ¶ 3.

13

14     In 2004, the FBI search of the IDTFs made Debtor aware of

15 the investigation.  "In October 2004, the Debtor placed the real

16 properties located at 3138 and 3138 A, B and C Montrose Avenue,

17 Glendale, California and 4037 Liberty Avenue, Glendale,

18

19
   _____
      3
20     Debtor lists other personal hardships suffered as a result
   of the seizure by the FBI at page 8 of the Motion.  However,
21 these personal hardships are not directly relevant to the
   turnover issue and will not be addressed herein.
22     On May 10, 2006, creditor, Siemens Financial Services
   ("Siemens"), filed a Joinder to the Motion ("Joinder").  Siemens
23 "understands that the primary, if not sole, source of recovery
   for creditors is the funds in question.  The purpose of
24 bankruptcy is to protect creditors.  Siemens believes that the
   scope and purpose of the Bankruptcy Code can be carried out if a
25 portion of the seized funds are turned over for distribution to
   creditors.  Once the creditor obligations are satisfied, the
26 government and/or the Bankruptcy Court may take appropriate
   action with respect to any surplus for the Debtor."  Joinder at
27 2.

28
                          - 4 -

1  California on the market for sale.  In December 2004, upon sale
2  of the real properties, the FBI seized the funds in the escrow
3  accounts opened for their sale.  The FBI also seized funds from
4  the Debtor's personal accounts and two vehicles.  A portion of
5  the seized funds and the vehicles constitute the Subject Assets."
6  Opposition at 2-3 (citations omitted); Kim Declaration at ¶¶ 4-6.
7  The seizures were pursuant to seizure warrants.  The District
8  Court "found that there was probable cause to believe that the
9  assets were subject to seizure and forfeiture because they
10 constituted or were traceable to the proceeds of the health care
11 fraud and/or constituted property involved in illegal money
12 laundering of the proceeds or were traceable to such property."
13 Opposition at 3; Kim Declaration at ¶ 7.
14

15      The FBI's investigation is not complete and Debtor has not
16 been indicted on any criminal forfeiture count(s") with respect
17 to the Seized Assets. "The government has been prevented from
18 filing a civil forfeiture complaint against the [Seized Assets]
19 because of the danger that such a complaint would reveal
20 sensitive or confidential information about the investigation and
21 jeopardize the same."  Opposition at 3 (citation and footnote
22 omitted).
23

24      The Government further contends that the cases cited by
25 Debtor do not involve forfeiture seizures and are easily
26 distinguishable.  "Whiting Pools concerned a seizure by the
27 Internal Revenue Service for unpaid tax, and In re National Safe
28 Center, Inc. [41 B.R. 195 (Bankr. HI 1984)] involved a seizure by

1  the United States Customs Service for nonpayment of duties and

2  other charges.  Unlike the seizure in the present action, the

3  seizures in these two cases resulted from the exercise of

4  administrative powers by federal agencies in the absence of any

5  judicial finding of probable cause or issuance of seizure

6  warrants.  In other words, the agencies did not take possession

7  of the assets for forfeiture to the government, but merely acted

8  as a creditor collecting on debts."  Opposition at 8.

9

10     The Government asserts that the District Court's decision in

11  In re Thena, 190 B.R. 407, 412 (D. Ore. 1995) is more helpful

12  than the foregoing cases.  In Thena, the government seized

13  certain assets on the grounds that they were involved in money

14  laundering.  The debtor therein filed for chapter 11 relief prior

15  to the issuance of any indictment.  The Thena court reasoned that

16  at the time of filing, debtor held legal title to the assets at

17  issue, but could not direct their use.  Consequently, the

18  "authority to 'use, sell, or lease' the seized property,

19  therefore, is not includable as property of the estate under 11

20  U.S.C. sections 363 or 541. . . ."  Thena, 190 B.R. at 412. Based

21  on the foregoing, the Government asserts that the Seized Assets

22  are not subject to forfeiture.[4]

23

24     Debtor believes that this case is distinguishable from

25

26  [4]

27     The Government also argues that the automatic stay is not
    applicable herein under 11 U.S.C. § 362(b)(4).  This argument
    will not be addressed herein, since the Court is deciding the
28  Motion based on the nature of the Seized Assets.

- 6 -

1  Thena.  Specifically, Debtor argues that in Thena, "seizure was

2  made for a violent crime and the debtor in that case immediately

3  filed bankruptcy for the purpose of obtaining a turnover.  Unlike

4  [Thena], here, the seizure occurred in December of 2004.  The

5  Debtor waited almost one year and, as a result of other

6  financial/creditor pressure, commenced the instant case. . . .

7  Debtor did not immediately seek turnover of the Seized Assets.

8  Instead, the Debtor sought a bar date and served all creditors,

9  including the Government, with the bar date notice."  Reply to

10 Opposition ("Reply") at 6.

11

12
                              **II**
                          **DISCUSSION**

13
        In deciding whether turnover is appropriate herein, the real

14 issue before the Court is whether the provisions of the

15
   Bankruptcy Code should trump the federal forfeiture statutes or

16
   vice versa.  Debtor's main argument is that the Seized Assets are

17
   property of the estate.  Technically, Debtor appears correct.

18
   There has been no adjudication of the forfeiture issue.  In fact,

19

20 no civil or criminal forfeiture proceedings have even been

21 commenced against Debtor.  Consequently, the Seized Assets appear

22 to be property of the estate subject to turnover under section

23 542(a).  See 92 Buena Vista Avenue, 507 U.S. at 127.

24     However, while the Government does not dispute that Debtor

25 has an interest in the Seized Assets, its position is that the

26 estate does not own 100% of this interest.  Specifically, the

27 Government relies on Thena, which analogizes this situation to

28

                              - 7 -

1  that of a trust. A debtor may own legal title to a trust, but

2  have no beneficial interest in it.

3       Thus, . . . the property of the estate includes the
         legal title, but not the beneficial interest in the
4        property. . . . In short, Chapter 11 does not permit
         the estate's inclusion of property which did not exist,
5        at the time of filing, for the debtor's beneficial,
         equitable use. Again, Congress promulgated Chapter 11
6        to protect, rather than enhance, the debtor's estate.
7  Thena, 190 B.R. at 412.

8       In the case of forfeiture, if property is seized

9  prepetition, a debtor has no "equitable right to direct the

10  seized property for the debtor's benefit. . . . The authority to

11  'use, sell, or lease' the seized property, therefore, is not

12  includable in property of the estate under 11 U.S.C. sections 363

13  or 541, . . . ." Id. Consequently, the Thena court concludes

14  that the seized property is not subject to turnover.

15       Debtor argues that Thena is distinguishable factually in

16  that: (i) the debtor in that case filed bankruptcy within two

17
    months of the seizure; and (ii) a violent crime prompted the

18  forfeiture proceedings. Debtor attempts to make himself appear

19
20  more "innocent," because he filed bankruptcy more than a year

21  after the seizure, and had to file due to financial hardships

22  caused by the seizure. However, a debtor's motive for filing

23  bankruptcy does not appear to expressly weigh into the Thena

24  court's reasoning as demonstrated above.

25       While Thena is not binding on this Court, it appears to be

26  well reasoned and allows the Court to prevent a potential

27  bankruptcy abuse. Specifically, if the Court were to hold

28

1 otherwise, entities subject to forfeiture proceedings could
2 "undo" any prepetition seizures by filing bankruptcy and seeking
3 turnover.  In addition, unlike the IRS in <u>Whiting Pools</u>, which
4 had a lien on the levied property therein, the Government would
5 appear to be left with a fourth priority distribution claim under
6 11 U.S.C. § 726(a)(4), and would arguably be worse off than a
7 general unsecured creditor.  <u>See</u> <u>Whiting Pools</u>, 462 U.S. at 207
8 ("The Bankruptcy Code provides secured creditors various rights,
9 including the right to adequate protection, and these rights
10 replace the protection afforded by possession.").  In sum,
11
12 holding otherwise could potentially render the federal forfeiture
13 statutes meaningless.

14                              **III**
                          **CONCLUSION**
15

16       Based on the foregoing, the Motion is denied based on <u>Thena</u>.
17 While the estate may hold legal title to the Seized Assets, it
18 does not possess the authority to use, sell or lease them.

19
20 DATED: March 26, 2007
21
22
23
24                                  _____
25                                       ERNEST M. ROBLES
                                     United States Bankruptcy Judge
26
27
28

1                          **CERTIFICATE OF SERVICE**

2
           I, _Gabriela Huerta_____, hereby certify that on
3          _3/20/07_____ _3/21/07____, I sent by regular mail a
4    true copy of the Memorandum of Decision on the parties at the
     addresses listed below:

5

6    David B. Golubchik, Esq.
     Levene, Neale, Bender, Rankin & Brill
7    10250 Constellation Blvd., Ste. 1700
     Los Angeles, CA 90067

8
     Nahapet Timiryan
9    508 Glenwood Road, #103
     Glendale, CA 91202
10

11   Pio S. Kim, Esq.
     Assistant United States Attorney
12   United States Courthouse
     312 N. Spring St., 14th Flr.
13   Los Angeles, CA 90012

14   Bill Goldman
     TGA, LLC
15   9 Alexandria Drive
     East Hanover, New Jersey 07936
16

17
                                   _Gabriela Huerta_____
18

19

20

21

22

23

24

25

26

27

28
                                - 10 -